Not for Publication

**United States District Court**
**for the District of New Jersey**

| | |
|---|---|
| In re:<br><br>NICHOLAS ELIAN and MARTHA MIQUEO-ELIAN,<br><br>*Debtors* | Case No. 10-49482 (DHS)<br><br>Adv. Proc. No. 11-02088 (DHS) |
| FRANK BERTUCCI,<br>               *Appellee/Plaintiff,*<br>   v.<br>NICHOLAS ELIAN,<br>               *Appellant/Defendant.* | Civil No. 15-242 (KSH)<br><br>**Opinion** |

**Katharine S. Hayden, U.S.D.J.**

      This matter comes before the Court on appeal from an order of the Hon. Donald H. Steckroth of the United States Bankruptcy Court for the District of New Jersey that was issued in connection with an adversary proceeding brought by Frank Bertucci. Bertucci sought judgment declaring that the amount of his claim, $1,347,247.38[1], was non-dischargeable in Elian's bankruptcy pursuant to 11 U.S.C. § 727(a)(2)-(6). In an opinion dated July 1, 2014 and order dated July 14, Judge Steckroth granted Bertucci's cross-motion for summary judgment in part and held the full amount of the claim to be non-dischargeable in Elian's chapter 7 proceeding under sections 727(a)(4) and (a)(5) of the Bankruptcy Code. For the reasons that follow, the Court affirms.

---

[1]     Elian's debt to Bertucci is based on his personal guaranty of a $1,065,948 loan. As of the date Bertucci filed his proof of claim, the amount owed, including interest, grew to $1,347,247.38.

I.   **Factual and Procedural History**

The debtor, Nicholas Elian, is a licensed dentist specializing in prosthodontics and, as early as 2004, maintained a dental practice in Fort Lee, New Jersey.  Beginning in 2006, Elian and some of his colleagues sought to expand this practice by creating a company that would provide specialized education in prosthodontics.  Together with his wife, Martha Miqueo-Elian, Elian acquired a two-thirds interest in Sylvan Avenue, LLC, which then acquired property at 300 Sylvan Avenue, Englewood Cliffs, New Jersey.  Elian borrowed over six million dollars to fund this endeavor.  Following purchase of the Sylvan Avenue property, Elian formed and became the sole member of Vizstara, LLC, a dental practice, and Vizstara Professional, LLC, the proposed education business.  But the Vizstara companies soon fell on hard times—in late 2010, both companies were facing eviction from the Sylvan Avenue property by a rent receiver appointed upon request of the mortgage lender.  On December 22, 2010, Elian filed a petition for relief under chapter 7 and also caused the Vizstara companies to file under chapter 11.

At the time of this filing Elian owed Frank Bertucci over $1 million—a debt that arose out of Elian's personal guarantee of a loan extended by Bertucci that was later reduced to judgment by the Superior Court of the Providence of Quebec, District of Montreal on August 12, 2009 ("Quebec Judgment").[2]  Bertucci filed his proof of claim in Elian's bankruptcy proceedings on March 28, 2011 and he commenced this adversary proceeding on July 1, 2011 to prevent the discharge of Elian's outstanding debt.  According to Bertucci, Elian "immediately took steps to make himself judgment-proof and/or insolvent in Quebec in order to hinder, delay or defraud [Bertucci] as creditor from collecting" on the judgment—conduct that purportedly continued throughout the bankruptcy proceeding as well.  (Complaint, ¶13.)

---

[2]   The Quebec Judgment was later docketed in the State of New Jersey.

Bertucci first alleges that Elian attempted to conceal his ownership of property in Montreal (his sole asset in Canada), which he originally purchased for $600,000 in October 2005. On August 15, 2009, three days after entry of judgment against him, Elian executed a power of attorney in favor of his sister-in-law, Lina, the sole purpose of which was to encumber the property with a mortgage to Elian's brothers, Hanna and Tony Elian. (Complaint, ¶15) Lina now lives in Elian's home and apparently pays no rent. And despite the fact that the property already was subject to a primary mortgage held by the Bank of Montreal in the amount of $280,000, Lina executed a mortgage on behalf of Elian and his wife to Elian's brothers in the amount of $500,000. Elian testified in his bankruptcy proceeding that "he cannot ever remember paying any money back to his brothers on the mortgage." (Op. at 4.)

As to Elian's remaining assets, Bertucci claims that Elian materially misstated his income upon filing for bankruptcy protection and, to establish that, Bertucci retained an accounting expert, Joseph R. Petrucelli of PP&D Accounting Services, Inc., to analyze Elian's financial condition. According to Bertucci, reports from Petrucelli's firm illustrate that, based on Elian's income (and failure to make mortgage payments), he should have had substantially more than the $19,819.49 cash on hand reported as of the petition date. Bertucci also claims that Elian dissipated substantial assets just prior to the petition date, citing in support a financial statement Elian purportedly signed and submitted to Team Capital Bank. That statement was completed on May 18, 2009 so Elian could obtain a $500,000 loan and it listed, among other things, cash of $400,000 and personal property of $750,000. Bertucci argues that, because this statement was submitted just 19 months prior to Elian's filing, "no reasonable accounting" could explain "the reduction of cash and personal property from $1,150,000 ($400,000 plus $750,000) in May of 2009 to $20,819.49 ($19,819.49 plus $1,000 personal property) in December 2010." (Op. at 6.)

Apart from this inconsistency in reported cash and personal assets, Bertucci also claims, and the bankruptcy court found, that Elian failed to list certain assets in his initial schedules. Specifically, the "schedules [Elian] initially filed failed to list: (1) a retirement account maintained at TIAA Cress worth $223,000, (2) [Elian's] wedding ring, (3) his interest in seven other businesses that he states were not active and never operated, (4) a TD Bank account titled in Elian's wife's name with a balance of about $250 on the Petition Date, and (5) a loan due to [Elian] from Sylvan." (Op. at 7.) Additional disclosure issues arose out of Elian's untimely tax filings—he did not file 2008 and 2009 tax returns until 2013, and provided Bertucci's counsel with copies of an amended 2010 tax return and the 2008-2009 returns only after receiving the PP&D reports. Bertucci claims that, because "[t]here were losses on the returns due to depreciation, a non-cash item," Elian "still had substantial income in 2009 and 2010, yet has no reasonable explanation" for his lack of cash on the petition date. (Op. at 6.)[3]

Bertucci claims that, taken together, Elian's conduct before and during his chapter 7 bankruptcy proceeding should render the debt he owes to Bertucci non-dischargeable. Specifically, he argues that discharge should be denied because (i) Elian "acted with actual intent to hinder, delay or defraud [Bertucci], a creditor, by transferring removing, destroying, mutilating or concealing [his] property" under 11 U.S.C. § 727(a)(2); (ii) Elian "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, record, and papers, from which his financial condition or business transactions might be ascertained" under 11 U.S.C. § 727(a)(3); (iii) Elian "knowingly and fraudulently, in connection

---

[3] The Bankruptcy Court found that, based on these tax returns, Elian was entitled to pre-petition New York state and federal tax refunds totaling $84,484.41 but never amended his asset schedules to reflect that amount. Elian disputed this in his opposition to Bertucci's cross-motion for summary judgment below, arguing that he did in fact amend his schedules to identify that this amount might be forth coming.

with the bankruptcy case, made a false oath or account" or "presented or used a false claim" under 11 U.S.C. § 727(a)(4); (iv) Elian "failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet his liabilities" under 11 U.S.C. § 727(a)(5); and (v) Elian "refused in the bankruptcy case to respond to material questions and to testify" under 11 U.S.C. § 727(a)(6).

These competing contentions were raised before the bankruptcy court in Elian's motion for summary judgment filed on February 10, 2014 (D.E. 59) and Bertucci's cross-motion for summary judgment filed that same day (D.E. 60). Judge Steckroth conducted a hearing on the motions after the close of discovery on May 13, 2014 and reserved decision. In his written opinion Judge Steckroth held for Bertucci under 11 U.S.C. § 727(a)(4) and (a)(5).[4] With regard to the former claim, he found that Elian made a false oath by failing to list various assets in his petition and, in doing so, demonstrated "a pattern of extreme carelessness and indifference, which at the very least, supports granting [Bertucci's] motion for summary judgment" under 727(a)(4). And as to 727(a)(5), Judge Steckroth found that Elian failed to provide an acceptable explanation as to the loss of $1,129,180.51 during the 19-month period prior to filing bankruptcy. On the basis of these rulings, the bankruptcy court ordered that "any discharge of debt granted to [Elian] be and the same is hereby vacated." (D.E. 80-1.)

---

[4] Elian appeals only the bankruptcy court's rulings on claims raised under sections 727(a)(4) and (a)(5). Judge Steckroth also found that issues of fact precluded summary judgment on the 727(a)(2) claim and denied both motions on that basis, and granted Elian's motion for summary judgment as to section 727(a)(3). In a subsequent order dated December 15, 2014, the bankruptcy court dismissed the 727(a)(2) claim for lack of prosecution and closed the adversary proceeding. (D.E. 94.)

## II. Legal Standard

This Court has jurisdiction over Elian's appeal pursuant to 28 U.S.C. § 158(a)(1). The bankruptcy court's legal determinations are reviewed *de novo*, its "factual findings for clear error, and its exercise of discretion for abuse thereof." *Hefta v. Official Comm. of Unsecured Creditors (In re American Classic Voyages Co.)*, 405 F.3d 127, 130 (3d Cir. 2005). Where the orders appealed present mixed questions of law and fact, this Court will apply the relevant standard to each issue. *In re Sharon Steel Corp.*, 871 F. 2d 1217, 1222-23 (3d Cir. 1989).

Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7056, and is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The judge's function at this stage is not to weigh the evidence and "determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 130 n.6 (3d Cir. 2001)  The non-moving party must, however, present more than a "mere scintilla" of evidence, *Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770 (3d Cir. 2007), and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving part, there is no genuine issue of trial" and summary judgment as a matter of law therefore is proper. *Id.* at 587.

**III.   Discussion**

Elian presents two issues on appeal:  (1) whether the bankruptcy court erred in granting Bertucci summary judgment on his section 727(a)(5) claim and finding that Elian did not satisfactorily explain his loss of assets to meet his liabilities; and (2) whether the bankruptcy court erred in granting Bertucci summary judgment on his section 727(a)(4) claims and finding that Elian knowingly and fraudulently made a false oath in the bankruptcy proceeding.  The Court addresses each in turn.

**a.   Section 727(a)(5):  Failure to Explain a Loss of Assets**

Section 727(a)(5) of the Bankruptcy Code provides in relevant part that "[t]he court shall grant the debtor a discharge, unless … the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtors liabilities."  11 U.S.C. § 727(a)(5).  This section is "broadly drawn and gives the bankruptcy court broad power to decline to grant a discharge in bankruptcy when the debtor does not adequately explain a shortage, loss, or disappearance of assets." *Harrington v. Simmons (In re Simmons)*, 525 B.R. 543, 548 (B.A.P. 1st Cir. 2015).  "The party objecting to a debtor's discharge pursuant to section 727(a)(5) has the burden of proving facts establishing that a loss or shrinkage of assets actually occurred." *In re Sendecky*, 283 B.R. 760, 765 (B.A.P. 8th Cir. 2002).  To meet this burden, the creditor must put forth "evidence that demonstrates that the debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors." *In re Hermanson*, 273 B.R. 538, 545 (Bankr. N.D. Ill. 2002).  If the creditor makes such a showing, the burden then shifts to the debtor to provide a "satisfactory" explanation for the loss of assets. *Sendecky*, 283 B.R. at 766.

What constitutes a "satisfactory" explanation under section 727(a)(5) is left to the discretion of the court. *Simmons*, 525 B.R. at 548. The "issue is whether the [debtor's] explanation satisfactorily describes what happened to [the] assets; not whether what happened to [the] assets was proper." *In re Perry*, 252 B.R. 541, 550 (Bankr. M.D. Fla. 2000); *see also D.A.N. Joint Venture v. Cacioli (In re Cacioli),* 463 F.3d 229, 238 (2d Cir. 2006) (describing the debtor's obligation to "explain the whereabouts of the assets."). The focus in this regard is both subjective and objective—the court must be satisfied that the debtor's explanation is an honest one, and that it adequately describes what happened. *See Stathopoulus v. Bostrom (In re Bostrom)*, 286 B.R. 352, 365 (Bankr. N.D. Ill. 2002) ("The focus of the inquiry is not exclusively on the subjective nature or honesty of the debtor's explanation, but also on the objective adequacy of such explanation."). If the explanation is "too vague, indefinite, or unsatisfactory" then the debtor is not entitled to a discharge—it must be "definite enough to convince the trial judge that assets are not missing." *Allred v. Vilhauer (In re Vilhauer)*, 458 B.R. 511, (B.A.P. 8th Cir. 2011). Consequently, "[u]nsubstantiated, uncorroborated and undocumented testimony from the debtor" is not likely sufficient to satisfy his burden of production. *Vilhauer,* 458 B.R. at 514-15.

Here, Bertucci met his initial burden of establishing that there has been a loss of assets or deficiency of assets to meet Elian's liabilities. The financial statement was submitted to Team Capital Bank in connection with Elian's application for a $500,000 loan. It is a form document with handwritten entries for asset types and value—Nicholas Elian's name is handwritten under the "Applicant Name" header, with Martha Miqueo-Elian's name in the "Co-Applicant" section. It shows that Elian and his wife maintained $400,000 in cash and $750,000 in varied personal property, for a total of $1,150,000 in liquid assets as of May 18, 2009. Just 19 months later, however, Elian reported to the bankruptcy court only $19,819.49 in cash on deposit and $1,000 in

personal property—a total of $20,819.49. This difference cash on hand and/or personal property—just over $1.1 million—represents a "substantial, identifiable asset that [is] now unavailable" for distribution to creditors like Bertucci.

With this showing, the burden then shifts to Elian to satisfactorily explain this loss of assets. *Sendecky*, 283 B.R. at 766. While he argues that neither he nor his wife signed the Team Capital Bank financial statement, Elian admitted under oath that he previously submitted a financial statement to Team Capital Bank in 2009 in connection with obtaining a $500,000 loan.[5] The statement is also accompanied by a certification signed by William H. Winans, Essex/Somerset Regional President at Team Capital Bank and the "officer in charge of monitoring and collecting the loan made by Team Capital Bank to Vizstara, LLC, which [was] guaranteed by Nicholas Elian and Marthat (sic) Miqueo-Elian." Winans certified that the financial statement was "completed as a requirement of [the bank's] loan process" and that the "Elians represented that the information contained therein [was] true, correct and complete."

Elian also submits (without support) that, even if the financial statement is to be considered, his "explanation is that [he] did not own the assets in the financial statement." (Elian Br. at 10.) In determining whether an explanation regarding a loss of assets is satisfactory, courts generally agree that (1) a creditor is not required to rely on a debtor's mere statement that the subject assets are no longer in his possession, (2) the debtor's explanation must consist more than a "vague,

---

[5] Elian argues in his reply brief to this Court that the financial statement is inadmissible because the accompanying certification "does not state that [Bertucci's counsel] has personal knowledge of the creation or maintenance of the financial statement and does not make any statement as to its genuineness." This argument was not raised with the bankruptcy court below, and therefore will not be considered in connection with this appeal. *United States v. Dell'Aquilla*, 150 F.3d 329, 334-35 (3d Cir. 1998) ("[A]bsent exceptional circumstances, an issue not raised in district court will not be heard on appeal."). Furthermore, the Team Capital Bank representative's certification, discussed *infra*, alleviates any concern as to the genuineness of the document.

indefinite and uncorroborated hodgepodge of financial transactions," (3) explanations "consisting of mere generalities and founded upon nothing by way of verification or affirmation in books, records or otherwise is not satisfactory," and (4) "vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." *PNC Bank v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 98-99 (Bankr. W.D. Pa. 2000). Elian's purported explanation was found unsatisfactory by the bankruptcy court in large part because he provided "no reasonable accounting explanation for the loss" and no "documentation as to what happened to the assets during the time between when the financial statement was prepared and sent" to the bank. (Op. at 16.) That finding, a matter left to the discretion of the bankruptcy court and reached after the close of discovery following a hearing on the matter, is consistent with the statute's implicit requirement that a dissipation of assets be explained by some objective, verifiable means. *See Simmons,* 525 B.R. at 548-49 ("[H]e relied upon his own uncorroborated statements that others were responsible for his predicament. This account does not present a genuine dispute for trial because, without speculation, we are unable to discern a satisfactory explanation for the lost rental income."); *Defoor v. Rafel Law Group PLLC (In re Defoor),* 2013 WL 6097882, at *9 (B.A.P. 9th Cir. Nov. 12, 2013) (finding that the bankruptcy court did not err in reasoning that the debtor's "documentary evidence" was "not credible to explain the losses and deficiencies in his assets."); *Vucurevich v. Valley Exch. Bank,* 2015 WL 632126, at *11 (D.S.D. Feb. 13, 2015) ("Even if the court considered the assertion contained within the letter, however, it would not change the fact that Vucurevich has not produced any receipts, specific amounts, documents, dates, corroborating testimony or affidavits from recipients of the funds, or other evidence which would allow the court to verify that the assets were utilized in the manner Vucurevich claims."). Consequently, the Court affirms.

### b. Section 727(a)(4): False Oath

To deny a discharge under section 727(a)(4), the Court must find that the debtor (1) knowingly and fraudulently, (2) made a false oath in or in connection with a case, (3) relating to a material fact. *See Perry v. Warner (In re Warner)*, 247 B.R. 24, 26 (B.A.P. 1st Cir. 2000). The purpose of this section is to "make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987). The statute is thus designed "to insure that complete, truthful and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction." *Id.* at 110.

The bankruptcy court found that Elian's initial schedules failed to list: (1) a retirement account maintained at TIAA Cress worth $223,000, (2) his wedding ring, (3) his interest in seven other businesses which he states were not active and never operated, (4) a TD Bank account titled in his wife's name with a balance of approximately $250 as of the petition date, (5) a loan due from Sylvan Avenue, LLC. (Op. at 7.) Elian does not dispute that he failed to include these assets in his initial schedules, and Bertucci therefore satisfied his burden in showing that Elian made a false oath in connection with this bankruptcy proceedings. *See Scimea v. Umanoff*, 169 B.R. 536, 542 (D.N.J. 1993) ("With respect to the first element, a false oath may be enough to sustain a denial of discharge when: (1) the false statement or omission occurs in the debtor's schedules, or (2) the false statement was made by the debtor at an examination during the course of the proceedings.") (internal quotations omitted).

With this initial burden of production by Bertucci, and inasmuch as the oath submitted in connection with Elian's initial schedules appears to be false, it falls to Elian "to come forward with evidence that he has not committed the offense charged." *Scimea*, 169 B.R. at 543. In this regard,

albeit fraudulent intent is required for a denial of discharge under section 727(a)(4), "extreme carelessness of the debtor in filling out the [p]etition will not excuse a false oath." *Id.* at 543. "[R]eckless indifference to the truth [is consistently] treated as the functional equivalent of fraud for the purposes of [denying discharge to a debtor]" under section 727(a)(4). *Tully*, 818 F.2d at 112 (internal quotations omitted); *see also Korte v. United States (In re Korte),* 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001) ("[S]tatements made with reckless indifference to the truth are regarded as intentionally false.")

Elian essentially argues that his omissions in the initial filings cannot be found the product of knowing fraud because each missing asset was "explained or shown to be incorrect." (Elian Br. at 14.)  He argues that all of the property at issue consisted of exempt or worthless assets, and disputes the bankruptcy court's finding that he "still has not disclosed a rental agreement with his sister-in-law, his New York University retirement account, millions of dollars in loans, and thousands of dollars in pre-petition tax returns." Elian submits that (1) he amended his schedules to list possible tax refunds though he never received any refund, (2) no "written lease agreement" exists with regard to his sister-in-law's living arrangement in the home he owns, and (3) he informed Bertucci (and, presumably, other creditors) about his NYU retirement account "despite the inadvertent failure of [Elian's] counsel to amend the schedules to include it." (Elian Br. at 15.)

But even this explanation is incomplete—Elian does not attempt to explain his continued failure to disclose the loans due to him, and assumes that an unofficial identification of his retirement account (worth over $200,000) satisfies this statute's imperative of complete disclosure. *See, e.g. Tully,* 818 F.2d at 111 ("[The] successful functioning of the Bankruptcy Code hinges both upon the bankrupt's veracity and the willingness to make a full disclosure.")  And as to those omissions he did correct, Bertucci points out that "[Elian] does not even claim to have provided

accurate information until *after* the close of discovery and [only] in connection with the summary judgment motion." (Bertucci Br. at 17, n.6) (emphasis in original).

"A debtor cannot excise a false oath by making subsequent corrections to his bankruptcy petition," *In re Costello*, 299 B.R. 882, 899 (Bankr. N.D. Ill. 2003), and Elian's as yet incomplete disclosure does not disturb the soundness of the bankruptcy court's finding that he demonstrated—"at best"—a "pattern of extreme carelessness and indifference" with regard to his disclosure obligations. *See Daniels v. Agin*, 736 F.3d 70, 84 (1st Cir. 2013) (denying discharge under section 727(a)(4) and finding that the debtor's belated disclosure of omitted assets showed only that, "when the Trustee was conscientious enough to press again for detail, [the debtor] eventually became more forthcoming.")

Elian's argument regarding his lack of business sophistication is similarly deficient. Elian submits that his disclosure violations should be overlooked because he (1) never sought an extension for his initial filings, (2) historically relied on his personal and business accountant, who was ill and not able to assist him completing the petition, (3) advised the trustee and others present at the meeting of the creditors that amendments would be made to the schedules, and (4) was "not fully familiar" with the structure of his businesses because they were established and administered by other professionals.  But a debtor "cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *Harrington v. Donahue (In re Donahue)*, 2011 WL 6737074, at *14 (B.A.P. 1st Cir. Dec. 20, 2011); *see also Sholdra v. Chilmark Fin. LLP (In re Sholdra),* 249 F.3d 380, 383 (5th Cir. 2001) ("Appellant's inexperience with financial affairs or reliance on incorrect advice or information, even if true, cannot withstand summary judgment.  Appellant's purported inexperience with financial affairs does not negate the fact that he made false oaths by knowingly

13

swearing to false information.") And Elian's argument therefore supports, rather than undercuts, the bankruptcy court's findings that he acted with reckless indifference.

The Third Circuit's decision in *In re Feng Li,* 2015 WL 3609498 (3d Cir. Jun. 10, 2015) is instructive. There the debtor, Feng Li, appealed the bankruptcy court's grant of summary judgment denying Li's discharge under section 727(a)(4) later affirmed by the district court. The appellate court recounted all findings of the bankruptcy court as to Li's false oaths or accounts made in connection with the proceeding: he failed to disclose multiple attorney trust accounts, a retirement account, home ownership, and certain income streams, among others. Li argued on appeal that "his failures to disclose were just 'an obvious silly mistake,' were not done 'knowingly and fraudulently,' or did not actually constitute failures to disclose, either because there was no need to disclose or because there was in fact a disclosure." The Third Circuit held, however, that "[e]ven if Li were to convince [the court] that *some* of his failures to disclose did not constitute false oaths made knowingly and fraudulent, *he has failed to establish that he has not at all* 'knowingly and fraudulently, or in connection with the case … made a false oath or account." (emphasis supplied).

Elian's continued reckless conduct and incomplete explanations substantially undercut the argument that the "has not at all" made a false oath with reckless indifference as to the truth in his bankruptcy proceeding. And his conduct has not supported his argument that the bankruptcy court's findings of fact here were "clearly erroneous." *In re Feng Li,* 2015 WL 3609498 at *2 ("We can set aside a bankruptcy court's findings of fact only if they are 'clearly erroneous.'") The bankruptcy court found that, given the multitude of omissions in Elian's initial schedules and his subsequent failure to fully correct the same, Elian's conduct demonstrated "a pattern of extreme carelessness and indifference, which at the very least, supports granting [Bertucci's] motion for

summary judgment with respect to the Section 727(a)(4) claim." (Op. at 15.)  The Court agrees and affirms.

## IV. Conclusion

For the foregoing reasons, the Court affirms the bankruptcy court's July 14, 2014 order to the extent challenged on appeal. An appropriate order will be entered.

 

/s/ Katharine S. Hayden
Date: September 2, 2015                                                                    Katharine S. Hayden, U.S.D.J.